IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

BILL KEY, JR., as Administrator of the )
Estate of Donnie Ray Key,[1] )
 )
    Plaintiff, )
 )
v. ) CIVIL ACTION NO. 04-JEO-199-J
 )
JOHN MARK TIREY, TOMMY HOOD, )
RALPH B. WILLIAMS, DARYL )
MOTE, BERRY HOGAN, and )
DARREN BRIDGES, )
 )
    Defendants. )

**ENTERED**

**JUL 12 2004**

## MEMORANDUM OPINION

Plaintiff Donnie Ray Key ("the plaintiff") filed this action pursuant to 42 U.S.C. §§ 1983 and 1988, alleging that he has been deprived of rights, privileges, or immunities afforded him under the Fourth Amendment of the Constitution of the United States of America as well as Alabama law. (Doc. 1).[2] He alleges state law claims of wantonness (Count Two at ¶¶ 22-25); negligence, carelessness, or unskillfulness (Count Three at ¶¶ 26-29); negligent supervision (Count Four at ¶¶ 30-33); false arrest and false imprisonment (Count Five at ¶¶ 34-37); and, assault and battery (Count Six at ¶¶ 38-41). (Doc. 1). He sues the defendants in both their individual and official capacities and seeks monetary relief and "other further equitable relief as the Court may deem just and proper to prevent or preclude future similar acts." (Doc. 1 at 4-9).

---

[1] On June 25, 2004, the plaintiff filed a "Suggestion of Death on the Record and Motion for Substitution of Plaintiff Party." (Doc. 16). The suggestion of death notified the court that the plaintiff, Donnie Ray Key, died on February 9, 2004. The court granted the plaintiff's motion and Bill Key, Jr., is now the proper plaintiff in this action. (Doc. 17).

[2] References herein to "Doc. ___" are to the numbers assigned the various pleadings in the record as assigned by the Clerk of the Court. The numbers are located in the lower-right hand corner of each document.

The defendants filed motions to dismiss the complaint, asserting that (1) they cannot be held liable on a *respondeat superior* theory; (2) the plaintiff's federal claims against them in their official capacities are barred as a matter of law; (3) they are entitled to qualified immunity to the extent the plaintiff brings his claims against them in their individual capacities; (4) the state law claims against them should be dismissed premised on sovereign immunity under Alabama law; and, (5) the plaintiff's claim for punitive damages is due to be stricken. (Doc. 8, 15 & 16).[3]

## MOTION TO DISMISS STANDARD

On a motion to dismiss, the court "must accept the allegations set forth in the complaint as true. *See United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)." *Lotierzo v. Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). Similarly, it must construe all the factual allegations in the light most favorable to the plaintiff. *Sofarelli v. Pinellas County*, 931 F.2d 718, 721 (11th Cir. 1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1947)). Such a motion may be granted only "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)." *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387

---

[3] John Mark Tirey, Daryl Mote, Berry Hogan, and Darren Bridges filed their motion to dismiss on February 24, 2004. (Doc. 8).

Defendants Ralph B. Williams and Tommy Hood were the only defendants not named in the original motion to dismiss. After the motion was briefed, defendants Williams and Hood filed their motions to dismiss the plaintiff's complaint (doc. 15 & 18), adopting and incorporating by reference all of the grounds contained in the original motion to dismiss and the reply brief filed on behalf of the other defendants. Defendant Hood was not served with the plaintiff's complaint until March 1, 2004, and defendant Williams was not served with the plaintiff's complaint until March 26, 2004.

(11th Cir.), *cert. denied,* 525 U.S. 1000, 119 S. Ct. 509, 142 L. Ed. 2d 422 (1998).

**DISCUSSION**

The plaintiff asserts that on or about February 2, 2002, he was driving on Fall City Road in Jasper, Alabama, when he approached a road block or check point set up by Walker County Sheriff's Deputies Daryl Mote, Berry Hogan, Ralph Williams, Tommy Hood and Darren Bridges (hereinafter "the defendant deputies") at the direction of Sheriff John Mark Tirey (hereinafter "the sheriff"). (Doc. 1 at ¶¶ 10-11). Realizing that he did not have his driver's license, the plaintiff panicked and drove through the road block without stopping. (Doc. 1 at ¶ 10).

When he failed to stop, the defendant deputies followed him. After traveling about one mile from the road block, the plaintiff stopped his car "on his own volition." (Doc. 1 at ¶ 12). The defendant deputies surrounded the plaintiff's car and drew their weapons. (*Id.*). The plaintiff was afraid to get out of his car. He put both hands on the steering wheel to show that he had no weapons and rolled down his driver's side window. He was then pulled out of the car through the window, thrown to the ground, and punched, kicked, and beaten by each of the named defendants. He was then handcuffed. (Doc. 1 at ¶ 13).

The plaintiff was next placed in the backseat of a sheriff's vehicle where defendant Hogan "tongue lashed" him "with cursing and other derogatory obscenities." (Doc. 1 at ¶ 14). Defendant Hogan then took the plaintiff out of the vehicle and made him apologize to the other deputies for failing to stop at the road block. (*Id.*).

The plaintiff was then taken to the Walker County jail and charged with reckless endangerment. After posting bond, the plaintiff's family took him to the hospital where he

received treatment for his injuries.[4]

### *Respondeat Superior* Liability

The defendants initially assert that they cannot be held individually liable under a *respondeat superior* theory. (Doc. 9 at 1-2). Specifically, they assert that the plaintiff has failed to adequately connect them to the incident made the basis of his complaint. (*Id*. at 2). The plaintiff retorts that:

> . . . . if the Sheriff, John Mark Tirey, allows for road blocks to be set up without proper prearranged purposes, persons stopped for any purpose at these 'check points/' road blocks [sic] have been improperly seized for the Fourth Amendment purposes. *Michigan Dept of State Police v Sitz*, 496 U.S. 444 (1990). [sic] The testimony in open court[5] proved that the Sheriff gave the deputies an oral ok to set up the road block that is the underlying incident to this lawsuit. Further the testimony from the deputy in charge at the road block, Darren Bridges, indicated several times during his testimony that the purpose was to stop anyone doing a crinme [sic], not to check driver [sic] liscense [sic] only.

(Doc. 11 at 6).

Supervisory liability is permissible only when the supervisor participates in the alleged conduct or when "some official policy 'causes' an employee to violate another's constitutional rights." *Monnell v. New York City Dept. of Social Services*, 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To state a claim against an individual supervisor, the plaintiff must allege and later demonstrate that the supervisors knew of "a substantial risk of serious harm" due to the purported circumstance, *e.g.*, using excessive force against a suspect, and then "disregarded that risk by failing to take reasonable measures to abate it." *Vinson v. Clark*

---

[4] The plaintiff alleges that he had "a broken nose, one tooth knocked out, three holes to the back of his head, both eyes swollen shut, not being able to swallow for being choked, and other extensive bruises, mental anguish and emotional distress, and also sustained numerous medical expenses." (Doc. 1 at ¶ 16).

[5] This is the only reference in the record to any court testimony. This court has not held any proceedings in this matter and is unaware of the basis for this reference. The plaintiff appears to be referring to criminal proceedings that may already have occurred in state court.

*County, Alabama*, 10 F. Supp. 2d 1282, 1296 (S.D. Ala. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

The court finds that the plaintiff has alleged a direct causal connection in the instant case between the defendant deputies. He has not, however, demonstrated the requisite causal connection concerning the sheriff for *respondeat superior* liability.[6] The plaintiff makes no allegation that the sheriff instructed the deputies to use any force against the plaintiff or that the sheriff was even aware that any such force was allegedly used. To the extent the defendant deputies seek dismissal of the plaintiff's § 1983 claims against them premised on the lack of *respondeat superior* liability the motion is due to be granted, allowing the individual claims to remain to the extent they are premised on their purported participation in the alleged conduct. To the extent that the plaintiff's § 1983 claims against the sheriff are brought against him premised on *respondeat superior* liability, the motion is due to be granted and the claims dismissed.

### The Official Capacity Claims Against the Officers

The defendants next assert that the claims against each of them in their official capacity are due to be dismissed on two grounds. First, they are precluded by Eleventh Amendment immunity. Second, they are not persons for purposes of § 1983 liability. (Doc. 9 at 2). The plaintiff does not specifically address these contentions in his brief. (Doc. 12).

In *Parker v. Williams*, 862 F.2d 1471 (11th Cir 1989), the court held that a sheriff sued in his individual capacity is entitled to Eleventh Amendment immunity because the suit is in fact an action against the state. Thus, the plaintiff's § 1983 claims against defendant Tirey are due to be

---

[6] To the extent that he attempts to do so concerning the traffic stop, for the reasons stated below, the court finds this allegation legally insufficient.

dismissed on this basis as well. Similarly, the deputies are entitled to the same immunity to the extent the claims against each of them are premised on their official capacity. The motions are due to be granted to the extent they seek dismissal of the official capacity claims.

### The Individual Capacity Claims and the Applicability of Qualified Immunity

The defendants next assert that they are entitled to qualified immunity on the § 1983 claim against them in their individual capacities. (Doc. 9 at 3-7). In contravention of this argument, the plaintiff seems to assert that dismissal of this action would be untimely at this juncture for the following reason:

> .... since there has been no discover, [sic] the facts as stated are deemed to be true until and unless discovery proves otherwise. Further the pleadings is [sic] not closed at this juncture. This complaint is against the sheriff John Mark Tirey both in his official and individual capacity, along with five deputies who are also sued both in their official and individual capacity. Upon full discovery there may be need to amend the complaint to allege other violations.

(Doc. 11 at 8).

In *St. George v. Pinellas County*, 285 F.3d 1334 (11th Cir. 2002), the Eleventh Circuit stated, in pertinent part:

> .... While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be, . . . , raised and considered on a motion to dismiss. *See Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001). The motion to dismiss will be granted if the "complaint fails to allege the violation of a clearly established constitutional right." *Id.* (citing *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997)). Whether the complaint alleges such a violation is a question of law . . . , accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Id.* The scope of the review must be limited to the four corners of the complaint. *Grossman v. Nationsbank*, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). While there may be a dispute as to whether the alleged facts are the actual facts, in reviewing the grant of a motion to dismiss, we are required to accept the allegations in the complaint as true. *See Wilson v. Strong*, 156 F.3d 1131, 1132 (11th Cir. 1998). Once an officer has raised the defense of qualified immunity, the

6

>burden of persuasion on that issue is on the plaintiff. *See, e.g., Suissa v. Fulton County*, 74 F.3d 266, 269 (11th Cir. 1996).

*St. George*, 285 F.3d at 1337. The Eleventh Circuit again addressed qualified immunity following the United States Supreme Court's decision in *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). The court stated:

>The Officer Defendants are entitled to qualified immunity for their acts unless they--given the circumstances--violated a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Hope*, 122 S. Ct. at 2515 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). The Supreme Court has said that an official is entitled to "notice [his] conduct is unlawful," *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2158, 150 L. Ed. 2d 272 (2001))(emphasis added), and to "'fair warning' that his conduct deprived his victim of a constitutional right." *Id.* (emphasis added). This notice or fair warning flows from the applicable law's being "clearly established" at the time of the official's alleged unlawful conduct.
>
>"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987)) (emphasis added). The unlawfulness must have been apparent. *Id.* In many--if not most--instances, the apparency of an unlawful action will be established by (if it can be established at all) preexisting caselaw which is sufficiently similar in facts to the facts confronting an officer, such that we can say every objectively reasonable officer would have been on "fair notice" that the behavior violated a constitutional right.
>
>The Supreme Court in the *Hope* opinion stresses that preexisting caselaw with "materially similar" or "fundamentally similar" facts is not always necessary to give an official "fair warning" of unlawful behavior. *Id.* at 2516. "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Id.* General statements of the law contained within the Constitution, statute, or caselaw may sometimes provide "fair warning" of unlawful conduct:
>
>>[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held

7

> unlawful.
>
> *Id.* (quoting *United States v. Lanier*, 520 U.S. 259, 117 S. Ct. 1219, 1227, 137 L. Ed. 2d 432 (1997)) (alteration in original) (internal quotation marks and citation omitted).[ ] Officials sometimes can still receive "notice that their conduct violates established law even in novel factual circumstances." *Id.*

*Willingham v. Loughnan*, 321 F.3d 1299, 1301-02 (11th Cir. 2003) (footnote omitted).

Additionally, in *Vinson v. Clarke County, Ala.*, 10 F. Supp. 2d 1282 (S.D. Ala. 1998), the court stated:

> The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). The *Harlow* case firmly established this doctrine of qualified immunity which, when properly invoked, protects government actors in their individual capacities from federal civil damage claims. *See id.*; *see also Tinney v. Shores*, 77 F.3d 378, 381 (11th Cir. 1996); *Lassiter v. Alabama A & M University, Board of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994).[ ] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986). Qualified immunity is an affirmative defense that must be pled by a defendant. *See Harlow*, 457 U.S. at 815. The availability of qualified immunity is a question of law. *See Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S. Ct. 2806, 2816-17, 86 L. Ed. 2d 411 (1985).
>
> Defendants have asserted a qualified immunity defense in this case. To be eligible for qualified immunity, a defendant must first demonstrate that he was a public official acting within the scope of his discretionary authority. *See Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988). The Supreme Court has said that an action is discretionary rather than "ministerial" when the action at issue was "influence[d] by the decisionmaker's experiences, values, and emotions." *Harlow*, 457 U.S. at 816. Ministerial actions are those acts that do not require the exercise of independent thought or deliberation by the person taking the action. *See Kitchen v. CSX Transp., Inc.*, 6 F.3d 727, 732 (11th Cir. 1993). The Eleventh Circuit has gone further by providing a concrete standard for determining whether an action is discretionary for purposes of applying the doctrine of qualified immunity. Qualified immunity is available to a government official--even if his actions appear to be ministerial in nature--so long as the official's actions "'(1) were undertaken pursuant to the performance of his duties,' and '(2) were

8

> within the scope of his authority.'" *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich*, 841 F.2d at 1564 (11th Cir. 1988)). If the conduct at issue falls within this definition, then it is established that the official was acting within the scope of his discretionary authority. *See McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995).

*Vinson*, 10 F. Supp. 2d at 1296-97.

The law enforcement defendants herein have properly raised the qualified immunity defense as it is evident that they were performing their duties as law enforcement officers at the time at issue. Thus, the plaintiff must allege and establish that the defendants violated a "'clearly established statutory or constitutional right[ ] of which a reasonable person would have known.'" *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1395 (11th Cir.), citing *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). He does this by alleging that each of the defendants violated his Fourth Amendment rights by (1) establishing a road block to prohibit his ingress and egress to and from his residence; (2) wrongfully arresting, handcuffing, and detaining him; and, (3) using "excessive force" by beating and assaulting him while in the defendants' "illegal/legal custody." (Doc. 1, Count One).

The court finds that at the time of the incident in question, no case law existed that would have put the defendants on notice that the establishment of a road block would violate an individual's constitutional rights in circumstances similar to those presently before the court. To the contrary, the Eleventh Circuit held almost ten years ago that road blocks are not unconstitutional to the extent they are conducted to further state interests and to the extent they

9

do not cause a significant delay. *See Merrett v. Moore*, 58 F.3d 1547 (11th Cir. 1995).[7] The court further finds that the defendants could not have had notice that the pursuit of and the detainment of an individual that evaded a road block and failed to obey a police officer would violate that individual's constitutional rights.[8]

To the extent that the plaintiff argues that defendant Bridges previously testified that the purpose of the traffic stop was not only to check drivers' licenses, but to arrest anyone committing a crime, the court finds that this is legally insufficient to state a constitutional claim. As previously noted, the United States Supreme Court has upheld traffic stops to check drivers' licenses. *Sitz*, 496 U.S. 444. The fact that officers were also using this as an opportunity to arrest additional individuals who were also involved in other criminal activities is not a violation of the plaintiff's Fourth Amendment rights. The defendants' motions to dismiss are therefore due to be granted.

However, to the extent the defendant deputies allegedly used excessive force by beating and assaulting the plaintiff, they are not entitled to qualified immunity. In determining whether excessive force was used by an arresting officer, a court must apply a Fourth Amendment analysis, concentrating on whether the challenged use of force was reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The Fourth Amendment prohibits unreasonable searches and seizures by those asserting

---

[7] The United States Supreme Court has similarly upheld the use of roadblocks for checking drivers' licenses and vehicle registrations, to prevent the entry of illegal aliens, and to check for drunk drivers. *See Michigan Dept. of Police v. Sitz*, 496 U.S. 444, 110 S. Ct. 2481, 110 L. Ed. 2d 412 (1990); *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S. Ct. 3074, 49 L. Ed. 2d 1116 (1976). It has stated, however, that a checkpoint program, which was primary for the purpose of detecting evidence of ordinary criminal wrongdoing, violates the Fourth Amendment. *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S. Ct. 447, 148 L. Ed. 2d 333 (2000).

[8] The plaintiff has not cited the court to any authority supporting a contrary conclusion.

the police power of the state. Section 1983 provides for a civil remedy when one acting under color of state law breaches that prohibition. 42 U.S.C. § 1983. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The standard requires a court to determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397. This objective test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

The allegations in the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to establish that the defendant deputies may have used excessive force against him. Therefore, they are sufficient to overcome the defendant deputies' qualified immunity defense at this juncture. Specifically, the complaint states that each of the deputy defendants punched, kicked, and beat the plaintiff until he had a broken nose, one tooth knocked out, three holes in the back of his head, both eyes swollen shut, and extensive bruises, among other things. (Doc. 1 at ¶¶ 13 & 16). Accordingly, the court finds that any further determination regarding the defendant deputies' use of force against the plaintiff is premature. The deputy defendants are not entitled to the defense of qualified immunity under the present circumstances.

The plaintiff, however, makes no allegation that the sheriff was present at the time of the road block or the alleged beating. Therefore, the court finds that the allegations are insufficient to show that the sheriff engaged in the use of excessive force against the plaintiff. The plaintiff's

Fourth Amendment claim is due to be dismissed as to Sheriff John Mark Tirey only.

### The State Law Claims and Sovereign Immunity

The plaintiff also asserts state law claims of wantonness;[9] negligence, carelessness, or unskillfulness;[10] negligent supervision;[11] false arrest and false imprisonment;[12] and, assault and battery.[13] The defendants argue, however, that the state law claims against them are due to be dismissed because they are entitled to sovereign immunity. (Doc. 9 at 7-9). They cite to *Parker v. Amerson*, 519 So. 2d 442 (Ala. 1987), and subsequent authorities in support of their claim. (Doc. 9 at 7-9). They also note that the only exception, which is not applicable herein, because there is no claim for injunctive relief, is found in Article I, § 14 of the Alabama Constitution. (*Id.* at 10). They further assert that these claims are due to be dismissed premised on Eleventh Amendment immunity. (*Id.* at 11). *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99-100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984), is cited in support of this contention.

The plaintiff retorts that the defendants cannot avoid liability in this action because any

---

[9] He alleges wanton or reckless disregard of his rights and that the defendants acted "wantonly and in reckless disregard of established laws, rules and/or training when they pulled him from his car, threw him to the ground, beat him, kicked him, wrongfully pointed a pistol at [him] and threatened to shoot [him]; and wrongfully handcuffed, arrested and detained [him] without arguable probable cause." (Doc. 1 at ¶ 23).

[10] He alleges that the defendants acted "negligently, carelessly, and/or unskillfully and in direct contradiction to established laws, rules and/or training when they failed to properly set up a road block, apprehended Plaintiff, beat him, placed him under arrest, wrongfully pointed a pistol at [him] and threatened to shoot him, and wrongfully handcuffed, arrested and detained [him] without arguable probable cause." (Doc. 1 at ¶ 27).

[11] He alleges that each of the defendants was "negligent in his training and supervision of Defendants in that the Walker County Sheriff's Department failed to exercise due and proper diligence in the training and supervision of its officers in exercising proper skills in their work." (Doc. 1 at ¶ 31).

[12] He alleges that each of the defendants "in direct contradiction to established laws, rules and/or training, negligently, willfully, wantonly and/or recklessly falsely arrested and falsely imprisoned [him] without arguable probable cause." (Doc. 1 at ¶ 35).

[13] He alleges that each of the defendants "negligently, willfully, wantonly and/or recklessly assaulted and battered [him] without arguable probable cause." (Doc. 1 at ¶ 39).

sovereign immunity they might have had was breached because the defendants "crossed the line from acting as official safekeepers of the peace and turned into a mob." (Doc. 11 at 7).

The Eleventh Circuit has held that individual capacity claims for purported violations of state law against an Alabama sheriff for money damages are barred by the doctrine of sovereign immunity, even when the claims involve malicious or intentional wrongdoing. *McMillian v. Johnson*, 101 F.3d 1363, 1364-65 (11th Cir. 1996) (citing *Tinney v. Shores*, 77 F.3d 378 (11th Cir. 1996)) ("the holding [of which] is clear: under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity"). Similarly, deputy sheriffs are also immune from suits in their official and individual capacities for state law torts. *Alexander v. Hatfield*, 652 So. 2d 1142 (Ala. 1994). *Accord Ex parte Haralson*, 871 So. 2d 802, 805 (Ala. 2003).

Another district court in this circuit has stated:

> The only exceptions to the sovereign immunity provided to Alabama state officers apply to those actions that are brought: (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of a statute. *Parker*, 519 So. 2d at 442-43.

*Vinson*, 10 F. Supp. 2d at 1305. In the present case, the plaintiff is suing only for monetary damages. Accordingly, none of the *Parker* exceptions apply, and this court must find the defendants immune from suit on plaintiff's state law claims. Thus, the state law claims are due to be dismissed.

## Punitive Damages Claim

The defendants lastly assert that the plaintiff's request for punitive damages is due to be

stricken. (Doc. 19 at 12). In support of this claim, they cite *City of Newport v. Fact Concerts*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981). Therein, the Supreme Court held that punitive damages against a municipality could not be awarded under 42 U.S.C. § 1983. The defendants are correct that punitive damages would not be recoverable under § 1983 against the county or the State of Alabama. *See* ALA. CODE § 6-11-26.[14] They are recoverable, however, on the individual capacity claims against the defendant deputies under § 1983. *See Gaines v. Choctaw County Com'n*, 242 F. Supp. 2d 1153, 1166 (S.D. Ala. 2003) (punitive damages are permissible in individual capacity claims). Accordingly, the motion for summary judgment on the punitive damages claims against the defendants in their official capacity is due to be granted.

## CONCLUSION

Accordingly, for the reasons stated above, the court finds that the defendants' motions for summary judgment are due to be granted in part and denied in part as follows:

    1. The plaintiff's § 1983 claims against all the defendants in their official capacities are due to be dismissed with prejudice;

    2. The plaintiff's § 1983 claim against the defendant deputies in their individual capacities concerning their purported use of excessive force is allowed to proceed;

    3. The plaintiff's § 1983 claims against Sheriff Tirey in his individual capacity are due to be dismissed with prejudice;

---

[14] Section 6-11-26 provides:

**No punitive damages awarded against state or agency thereof.**

Punitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof, except any entity covered under the Medical Liability Act now codified as Section 6-5-480 et seq., or any acts amendatory thereto.

ALA. CODE § 6-11-26.

      4. The plaintiff's state law claims against all the defendants are due to be dismissed with prejudice;

      5. The plaintiff's claims for punitive damages against all the defendants in their official capacities are due to be struck and dismissed; and,

      6. The plaintiff's remaining § 1983 claim (concerning excessive force) to the extent it seeks punitive damages against the deputy defendants in their individual capacities is allowed to proceed.

An appropriate order will be entered.

**DONE**, this 9th day of July, 2004.

                                                  JOHN E. OTT
                                                  United States Magistrate Judge